2019-2030. Mr. Weed. Mr. Weed. Thank you, Your Honor. May it please the Court. As Judge Lurie correctly noted, this is the same claims at issue, and so the question here is a dependent claim that has a single limitation, which is that you have the edge stop layer be a multi-layer structure. And in this particular case, the Board erred in its understanding of what is disclosed by the Wadetani reference. Can you confirm the prior appeal, and does that move this appeal? Yes, Your Honor. But not taking that as a given, I'll continue with my argument. So I think it's important to start with what's clearly and unquestionably disclosed by the Wadetani reference. And this is in the appendix at 686. It's column 7, lines 54 through 55 of the Wadetani reference. And it says, further, the etching stopper structure 81 may include three or more layers of silicon dioxide, silicon nitride, or silicon carbide. That's a clear teaching. And what that teaches, we respectfully submit, would be understood to be the various combinations. So you take three layers. The first layer can be any of those three materials. The second layer could be any of those three materials. The third layer could be any of those three materials. Now admittedly, you have to read that in the context of Wadetani and the rest of the disclosure. And what the rest of the disclosure teaches is that you have to have some difference between your top etching layer and at least one of the layers. And that disclosure would, by its own terms, include, say, three layers of silicon dioxide or three layers of silicon nitride. Taken in the context of the rest of the disclosure of Wadetani, one of ordinary skill would understand that that's not what's being taught there. But that's the only limitation. Where the board erred was in saying that Wadetani taught that, therefore, you could not have, for example, a layer of silicon dioxide followed by two layers of silicon nitride. And that error arises in two places. First, the board reasoned that the only specific example of a three-layer etch stop in Wadetani was a layer that had three separate materials. But simply because that was the only specific three-layer example given does not limit the disclosure of Wadetani, does not mean that this passage would not teach and encompass, for example, silicon dioxide followed by two layers of silicon nitride. So there was an error there. Secondly, the board also erred by pointing to Column 6, Lines 25 through 27 of Wadetani, which is at Appendix 685, where it talked about, in addition to whatever your first etch stop layer is, or your first layer in the etch stop structure, that you could then have a stacking of silicon dioxide and silicon carbide. And what's important about that phrase, or about that teaching there, is that it simply teaches you can do a stacking of them. It says nothing about the order in which they are in connection with the first layer being silicon dioxide. Well, if the order was important, if it was important that you didn't have two materials of the same, or two layers of the same material next to each other, the patent would have taught that, well, if your first layer is silicon dioxide, that then when you stack, if you're going to stack silicon dioxide and silicon carbide beneath it, you have to make sure that the silicon carbide comes in between. But there's no such teaching there. And so the board improperly limited... What about the abstract? I mean, the abstract says you have two etch stop layers of different materials. And then the claim, the claimed invention makes it very clear that you have two etch stop layers of different compositions. That's absolutely true when you have an etch stop layer that is only two layers. There is substantial evidence of review standard. We just have to figure out whether the board was reasonable in reading this reference as mandating when you have this kind of multi-layer etch stop, you're going to have different materials for your different etch stop layers. Just based on the abstract and the claim and the less than clear disclosure throughout the rest of the specification about whether or not you can have two of the same materials stacked right on top of each other, it feels like the board did something that was at a distance based on the abstract and the claim itself. For two reasons, Your Honor. I would first suggest that the abstract and the claims, as I believe you noted, reference where you have a two-layer etch stop structure. And so there, certainly there's no dispute. In Watatani, it's very clear you have to have different materials. And so Your Honor is right. The question is, what does it mean in the context where you have three or more layers? And again, there I would suggest that given that the disclosure is three or more layers composed of silicon dioxide, silicon nitride, or silicon carbide, so three choices, that in and of itself indicates that you can't require every layer to be separate, to be distinct. Otherwise, I mean, there's certainly no way you could have a four-layer structure composed of those three materials where each layer was distinct. So the question was, was the board reasonable in saying that each layer had to be distinct from the layers adjacent to it? And there I would suggest that it was unreasonable, that it's not supported by substantial evidence, because Watatani simply teaches you need to have selectivity at one point, from the topmost etched layer to something beneath it. And this was confirmed also by the patentee's own expert, who in the appendix at 1213 at between the top layer and at least one layer beneath it. The board erred by then saying that that would therefore have to translate into every layer having to be selectively etched with respect to the other. So the second way in which the board erred, in addition to misreading the disclosure of even if Watatani disclosed the claimed structure, that there wasn't a motivation combined. And again, the board erred there by misreading the disclosure of the admitted prior art, and by misreading the testimony of the patentee's expert. And in their decision at appendix 38, they referred to the testimony of patentee's expert that was cited by Petitioner, and they said, well, all this teaches is that it could be done, not that it needed to be done. But in fact, that testimony, if you go back and look at the question, the question was, was there a reason one would want to do this, not whether one could do this. So that, I think, is just a clear misreading of what that testimony was and cannot support the conclusion, therefore, that that testimony does not indicate a motivation to combine. Secondly, the other basis that the board used to argue that there wasn't a motivation was that there were no organic interlayer insulating layers. That, however, is not, in fact, supported by a proper reading of the admitted prior art. And so, just to clarify, the admitted prior art, which is what the 330, the patented issue, admitted was the prior art and which was the basis for, or part of the basis for, on which the board found the independent claim to be invalid and basically disclosed what's referred to as this dual damascene structure. It gave the example of using an inorganic interlayer insulation layer, but nowhere did it limit it to being only that, nowhere did it suggest that it would only apply in cases where the insulation layer was inorganic. And, in fact, Watatani itself, when it discusses the prior art, and this is at Appendix 684, Column 3, Lines 45 through 50 of the Watatani patent, explains that the dual damascene structure, which it's just described, is applicable and useful, both with inorganic and organic interlayer insulation layers. And so, therefore, the board's attempt to distinguish Watatani from the admitted prior art is contradicted both by the admitted prior art as described in the 330 patent and by the description of Watatani. If the court has no questions, I'll reserve my time. We will save it for you. Thank you. Mr. Maloney. May it please the court, the final written decision affirming the patentability of Claims 2 and 7 should be affirmed. NANIA's challenges are limited to the board's factual findings regarding the disclosure of Watatani and the evidence relating to a motivation to combine. As the court is aware, those findings are reviewed under substantial evidence test. The record here leaves no doubt that there was substantial evidence to support all of the board's factual conclusions relevant to the patentability of Claims 2 and 7. And NANIA is essentially asking this court to reweigh the evidence, and that's not something this court does under substantial evidence review. The issue of what Watatani discloses is actually very straightforward. The whole purpose of Watatani's etched-up structure, this multi-layer structure, is directed to something entirely different than the claims of our patent. It is, as the court is aware from the briefing, directed to protecting the uppermost organic layer of an organic damascene structure during the stage of the process where photoresist is being applied. And in Figures 5a through i, it shows this in sequential steps. And it shows that there's a first photoresist, and then that is used to start making the wider part of the channel, and then another photoresist to make the via that's narrower than the channel. And this is all laid out very carefully. And what Watatani explains is this dual-layer etched-up applied over that organic layer will allow the photoresist to be removed and reapplied if it needs to be, because it was misaligned, without damaging this organic layer. That has nothing to do with the silicon nitride etch stops of Claims 2 and 7, which are below the vias and below the channels where the dielectric constant matters because that's where this problem of capacitance coupling occurs. And so for that reason alone, this decision can be affirmed, as the board pointed out. Nanya's petition and its arguments through trial never came anywhere close to addressing the very different purpose of the multilayer etched-up in Watatani from the purpose of the etched-ups in the claims and the different location. This is a product claim. The purpose isn't involved. Well, the different location, Your Honor, I thank you for that. The location of these etched-ups in the claims are below the via or below the channel to protect the underlying dielectric layers in those structures at that location in the structure. The multilayer etched-up in Watatani Figure 5 is not at that location. It is above the uppermost organic layer. Nanya's argument was essentially that because these references are all in the same technological field that there would be a motivation to combine. And the board correctly rejected that under ample case law, establishing that the fact that two references can be said to be a similar endeavor is not enough to establish a motivation. And so that alone is independent reason to affirm. In terms of what Watatani discloses, there is not a single embodiment, not a single specific embodiment in Watatani disclosing a multilayer etched-up of two or three or four layers where two of those layers are made of the same material and are adjacent to each other. It's just not there. What we have is just this one sentence that the board correctly concluded was vague and ambiguous that simply indicates that this multilayer etched-up structure may include three or more layers of silicon oxide, silicon nitride, or silicon carbide. But that has to be interpreted in view of the disclosure of Watatani as a whole, which emphasizes the need for the adjacent layers to be of different materials. And the only fair interpretation of that statement in the context of a three-layer structure would be one that a person of skill and art would conclude the same principle applies. You can use three layers, but each adjacent layer is of a different material. That's the very nature of this etched-up. It has a gradient of etch selectivity that allows you to remove a layer above without going all the way through this multilayer structure. And in the context of Figure 5, we see that there are actually two photoresist steps. And so one of skill and the art would have no problem understanding that the three-layer structure would allow you to remove and replace the photoresist at either of those steps, the first photoresist step or at the second. To do that, you would need three layers. But once again, those three layers would each have to be of a different material so that you can remove the photoresist. It sacrifices the highest etched-up layer during that, but doesn't dig into the next one. So it's intact for the next step and the next step. And so, again, there's nothing in Watatani, and the board correctly found. The problem for Nanya is that Nanya couldn't identify any teaching in Watatani that suggests that the adjacent layers should be of the same material. And this hypothetical structure that Nanya pointed to of silicon oxide underneath that silicon nitride and then a third layer of silicon nitride was just something Nanya dreamed up. It's not in Watatani anywhere, and there's no purpose to it. In fact, Nanya's brief acknowledged that there'd be no purpose in Watatani to having an etched-up with two adjacent layers formed of the same material. Nanya concludes from that, well, there must have been some other purpose, maybe relating to dielectric constants, but that's entirely backwards. Because, as Nanya concedes, there would be no purpose in Watatani's disclosure to having multiple adjacent layers of the same material, a person skilled in the art, without looking at the 330 patent at issue, would nowhere find any suggestion to make such a structure. And, of course, they wouldn't have any suggestion to put that structure below the vias in the channel as opposed to where it is located in Watatani's structure. The Board's findings regarding the disclosure of Watatani are clearly supported by substantial evidence, including the reference itself and the expert declaration of our expert, Dr. Bottoms, all of which the Board considered. The Board considered all of Nanya's arguments in its own expert submissions. So there's really no grounds here to reverse a problem with substantial evidence. And although not pointed out in this argument, but in the brief, Nanya's focused heavily on the William Wrigley case. I just want to point out that was a case where the piece of prior art, it suggested the very combination, a flavoring agent combined with a cooling agent for chewing gum. And the question was, well, but what does that really suggest when there's multiple cooling agents disclosed and multiple flavoring agents? When you have two lists like that, would it be apparent to one of the skilled in the art to have the specific combination of WS-23 coolant and menthol flavoring agent? That's not the issue here. The difference is there's nothing in Watatani that suggests using silicon nitride adjacent to another silicon nitride. So it doesn't matter how many different statements Watatani may have about different materials that can be used or different numbers of layers. There's no suggestion to make that combination. It's not a question of whether there's... Counsel, do you want to comment on the unusual nature of these two cases? One where patent has been found obvious, and here, this one where it's been upheld. Same patent, same claims, same board, roughly same references. Thank you for that question, Your Honor. I think what it demonstrates is that had the board in the Micron proceeding stuck with the ground, set forth in a petition, it would have clearly come out the other way. It would have come out the same way as it did in this appeal, in this NANU proceeding. Because again, the petition in Micron was Watatani's figure 5 plus figure 1. Now figure 1 was to show the conventional damascene structure. NANU referred to the specification of the 330 patent for that. Same thing. So as the board correctly found in this proceeding, in the NANU proceeding, there's absolutely no reason why a person skilled in the art would make the combination of Watatani figure 5 and the conventional damascene structure to get the claimed invention, which is a multilayer silicon nitride etched up below the vias in the channels. And that's the correct result of the NANU proceeding. Should have been the outcome of the Micron one, but in Micron, as we've talked about in our position, in our view, additional references were brought in in order to change, which were material to the ultimate outcome. So this is a very unusual proceeding, Your Honor. But we clearly agree with the board's analysis of the art, Watatani and the record in this proceeding that really comes nowhere close to showing a reason that the claims would have been obvious based on Watatani. I do want to touch on this testimony of our expert, Dr. Bottoms, because it's important to NANU's position. Basically, the questions have nothing to do with the specific issue. The actual testimony began with a very broad question about whether it was known by a person skilled in the art or by another. It's an incredibly broad question, and our expert acknowledged, well, sure, that's been known for decades. Then he asked if you could bring this into the more relevant context. And so the follow-up question was, well, let's put it in the context of dielectric materials in a semiconductor structure. Were there reasons known to one skilled in the art why you might want to put multiple layers of the same dielectric material? So that question's not asking about etched-up layers. It's not asking about dual-damascene structures. It's asking about multiple layers of dielectric material. Well, per the claims of the patent, the dielectric layers are not the etched-up layers. The dielectric layers are the layers in which the channels and the vias are formed. And so this was a very imprecise question, and it led to a very ambiguous answer, where our expert said, well, certainly the authors of Watatani knew it. Knew what? Knew that you could put multiple dielectric layers of the same material in a semiconductor device. It's a meaningless question, and it was a meaningless answer. And now they're trying to say that the board misinterpreted it because the board should have read Dr. Bottoms' mind and concluded that he was really asking, answering a different question. There's nothing in this testimony where our expert admitted anything about whether it was known in the art to form any etched-up layer of a multiple layer structure for the via or the channel, let alone of silicon nitride, let alone with a reasonable expectation of success that such a layer is a dielectric constant below 5.5. That was a relevant question that these claims required my, or Nat and Anya, to address, and their evidence simply fell well short of that. They've used this testimony both apparently to try to show that the board ignored evidence of the existence of this limitation in the art, that the board had misapplied Watatani, and that the board had improperly found that there was insufficient evidence of a motivation to combine. But because, as I just pointed out, the testimony isn't even relevant to the structure claimed here, it doesn't undermine the board's decisions on any of those issues. Unless there are any other questions, I will concede the remainder of my time. Thank you, counsel. Mr. Weed has three minutes plus if he needs them. Thank you, Your Honor. Just a few points, unless, of course, the court has additional questions. Regarding the issue, and in particular the cases that the board relied on to say, well, it's not enough to point out that two pieces of prior art are in the same field, that is certainly absolutely correct, but that's not what happened here. In fact, we don't have simply just two references that relate. So, for example, in the natural alternatives case, where they simply just related, both related to the transportation industry, an incredibly broad field. The other case that relied on securities technologies, they related to telecommunications monitoring, an incredibly broad field. Here we have two pieces of prior art, both related to the same semiconductor structure, the same formation. And I think where it's particularly telling here, and this touches a little bit on your question, Judge Lurie, in which I believe counsel just commented on, is in the previous appeal, in the Micron IPR, Watatani was used not just, not in the way that NANYA used it, but to describe the dual-damascene process and the dual-damascene structure. In the NANYA case, the NANYA petition relied upon the admitted prior art to describe that. So the fact that in that related IPR, Watatani was serving the purpose of the admitted prior art from the 330, I think highlights how closely related these two patents are and why one would be motivated to combine them. And then I would just additionally add that to the extent that the patent owner has suggested that Watatani is directed to something else and so therefore wouldn't be combined, the law is clear that a reference doesn't have to be addressed to the same problem. If one of ordinary skill in the art would recognize that it could improve the structure, then one would be motivated to have the dual-damascene structure with the low dielectric, which was independent claim one, which has been invalidated three times now and is not being challenged on either of the appeals. And you have the teaching in Watatani that you can have a multiple layer etch stop structure, which can serve multiple purposes, and so one would be motivated to combine those two cases.